Good morning, judges. How are you today? My name is Brian Neary. My last name is spelt N like Nancy, E-A-R-Y. I appear on behalf of the appellant whose name is Anna Delladonna. I am joined, of course, with my brother Ralph Lamparella. If I may reserve one minute of rebuttal time, and Mr. Lamparella will exercise that discretion as to whether or not to do so, as long as we have just one rebuttal. It'll just be Mr. Lamparella. That's fine, Mr. Neary. But you have to speak up a little bit. I will, Judge. Okay. Okay. Judge, I will ask the Court that I can address two separate issues. The first issue is... Your time. You can do whatever you want. Thanks, Judge. Point number one, dealing with the severance, and point number two, dealing with what I believe to be the critical error on behalf of Mrs. Delladonna, the use of the term friendship during the jury charge by Judge Ackerman. On the issue of severance, the argument is brief. I understand that the three counts of political corruption, the two mail frauds as well as the Hobbs Act, go together. I understand also that the two counts of taxes could go, should go together also, again, under a concept of a single transaction. They were consecutive years. Right. But the problem is that the fourth count, and it's not just a numerical configuration of the indictment, it's the $9,000 income tax fraud, was lumped in, I say that respectfully, but lumped into the indictment. And the analysis by the Court was three counts to the fifth count, saying that the tax count with regard to the extortion works. And you've had... I'm sorry. No, well, I was just going to say, we know what the Court did. We've read the brief. Okay. So my question to you is, you seem to be very upset that the Court looked at count five before it looked at count four. There's comments about backdooring and things like that. But are you denying that... I didn't take you to be denying that the fifth count is related to counts one through three, right? Correct. And that the fourth count is related to the fifth count? Correct. Okay. So if, as a... I'm just having trouble following the logic. Help me out. If one through three connect to five, and five connects to four, why can't they all come properly? Why was the District Court bound to say, well, I can't think about count five. I've got to think about count four, because count four comes after count three. I think, Judge, that the way that you framed the question illustrates the difficulty in this sense, is that the analysis should have been that once you got the tax counts, and once you got the political corruption, right, do you make the choice? And it's supposedly because four and five are not automatically counted, connected with one, two, and three as a similar transaction. Three and four. Four and five are. One, two, and three are. Not the two of them. The choice then should have been configuring it that way. Three and two. Should we exercise our discretion? Okay. Excellent point. Then we're talking about 14A and not 8B, right? Well, I think it's still 8B, Judge. Well, you just said exercising discretion. As soon as you start saying this is a matter of discretion, aren't you out of 8B and into 14A? I think discretion would also be in 8B also, Judge. 8B is a mandatory... 8B talks about what you can and can't do. 14A talks about what you may and, you know, talks about discretion. What's your authority for saying that under 8B, once we're talking about the court's discretion, 8B is the applicable rule and not 14A? My belief is, my understanding is that four and five, as analyzed together, would then require the court to separate them from one, two, and three. I would respectfully suggest it's still an issue of judicial economy. In terms of, do you keep it in there? It took a half a day at the end of a 22-day trial to put in, in essence, the tax information. You know, I visualize your argument that, well, one, just forget these particular counts. The first count is reasonably related to the second count. But unless the first count and the third count are reasonably related, you just can't keep building. And I thought of a key. You take a key to a keymaker, a locksmith. He makes a copy, and it works. Now you make a copy from the copy, and when you put that in a lock, it doesn't work. You've got to go back to the first one, because there's a little variance, you know, each time. Isn't that really the argument you're getting too far out? I mean, because of, I mean, you can't just keep building blocks. What was your prejudice? I'm sorry. Answer, Judge. Well, I don't know. Can, is that a, is that a, is that a question? Is that your argument, that you can't building blocks? No, no, Judge. I think it really goes to the prejudice issue with regard to a $9,000 tax fraud dealing with Section 8 housing is now lumped into a case of basically political corruption. And the theory being, well, if they were, if they're tax cheats, then they theoretically must be corrupt politicians. That's a nice argument, except isn't it answered by the fact that the jury acquitted on counts 1 and 2? And if the inclusion, as you argue, of count 14 was to make the jury think these are bad people, then that would have applied throughout the jury's determination. But the jury actually acquitted on counts 1 and 2, and therefore, seems to me, it's hard to argue prejudice. I would, my only response, Judge, would be they still, they still convict him of count number 3. Well, because he was guilty. At least they thought he was guilty. I mean, of course they convicted him. If I could segue into that, why I think that count number 3, that Anna Della Donna shouldn't have been guilty. But the point is, your assertion is that this jury could not have separated things out. I mean, there's no argument, as I take it, that the court didn't clearly instruct them about what the separate counts were, right? There was a charge with regard to that. Right. And the jury demonstrated its capacity to keep the charges separate because, I mean, to keep the counts separate because it, in fact, acquitted on the first two counts. So, what I think Judge Slover's asking won't speak for, but what I'd like to know is, if the jury has demonstrated its capacity to separate the counts and consider them separately, where's the prejudice to you in having these things together? You can be praised. You can speak for me. It still is the problem, Judge, with the third count of the indictment. They still could find with regard to that. Well, but what does the jury's verdict on count 3 have to do with the joinder of counts 4 and 5? The gratuities unreported in count 5 would have been related to what would be in count 3. Yeah, you agree with that. That's fine. My brief retort, I have but no time left. My brother will give me 30 seconds. I say this. The word friendship was the theme of this entire trial. Fifty-three times during Dubie Medrano's cross-examination, she talked about friendship. The government even used the word friendship. Judge Ackerman, may he rest in peace, by the use of that word friendship, the only example he used during the entire jury charge basically took it away from me. The argument of simple kindness and acts of kindness and friendship that were turned into conspiracy and crime were not simple misstatements. They were not simple words of, let's say, as the court's case is a poor choice of words, but in fact was the very essence of it. He should have said nothing with regard to it, or as in the example on page 14 of the brief, he said he should have framed it out. If, in fact, you found friendship, you could find that there was not a criminal intent involved. Thank you. Thank you. Good morning to the court. My name is Ralph Lamparello. I represent the appellate David Delladonna. May it please the court. I'm going to focus on count three of our brief, which is also count three of the indictment. Specifically, we believe that the court below erred in failing to grant our application under Rule 29C. Specifically with regard to David Delladonna, I want to narrow it down even more under the implicit quid pro quo for a Hobbs Act conviction. The court found no explicit quid pro quo. Implicit quid pro quo for David Delladonna, as this court said in Antico, and this is the authority. The official must know that the payment, the quid, was made in return for official acts. I want to focus on the quid. The record below indicates clearly that David Delladonna received one quid, a birthday card with the name the Medrano family on the outside. A $500 gift card. Inside the birthday card. Yeah, well, I mean you can give bribes in any way. Why is the fact that it was in the birthday card so important? Because we need, Your Honor, we need the element of intent. We need the fact that the quid was given knowingly. Judge Ackerman below talked about metaphorical winks and nods. I'm sorry, Your Honor. Why is it improper for a jury to look at this husband and wife together in regards to a series of gifts benefiting a family? Is your legal position that giving thousands of dollars in gifts to Anna, paying for surgeries, taking her on expensive gambling trips, buying the dog, that a whole series of things that go, are funneled to her, are somehow things that have, if, and I don't mean to be overly familiar in using the first names, but to keep them separate, if David is aware of these things, and there's evidence that he was aware of them, he disputed, but there's evidence he was aware of them. If he's aware of all these things coming to his wife, are you saying that as a matter of law that's an insufficient quid? I am saying to the court on 1702 of our appendix, the exact quote from Duvy Medrano, and we know Louisa Medrano never spoke to David because of the language barrier. The exact quote from Duvy Medrano is, Louisa and I always thought he, meaning David, never knew about the gifts. This is why we gave it to him directly, meaning the birthday card. So he knew it was coming from us. That cannot be speculated. The jury cannot speculate. That's the government's case. He never knew about the gifts, therefore we gave him a birthday card. That's what this court is left with, and what the jury has, a birthday card. There was no other evidence, including his own statement that, if anything takes me down, this is going to be it. Your Honor, if I may say, the government in their brief misquoted that. Do you think he was talking about the birthday card? The exact quote, Your Honor, if I may, and I'll direct that, the exact quote is, but I know if anything is going to take me down, and this was eliminated from the government's brief, meaning the end of my political career, it would be this. And then it went on to say, his relationship, their relationship with the Medranos. This woman, Louisa Medrano, was on the lead story of the nightly news in the New York area for human trafficking, the front page of all the metropolitan newspapers, and Anna Della Donna, because of her friendship, took $5,000, unbeknownst to her husband again, to get a lawyer for this woman in jail. If anything was going to take me down, meaning the end of his political career, he won't be mayor anymore because his wife is such an oddity with this. Sure, I can understand that that is an argument that a jury could have accepted about the meaning of that comment, but are you saying that it was beyond the pale? It was irrational for the jury to view that comment and say, no, it didn't just mean the end of my political career because she's in the news, it meant this is the end of my political career and maybe worse because there's a bunch of stuff that's going to hit the fan. I mean, that's what I take it the government wants us to say. Aren't we bound by the standard of view we have here to view this evidence in the light most favorable to the government? Absolutely, but the context of that quote is Davis talking to Javier Inclan, his council person, and saying to him that Anna gave me tickets for Louisa. This is after Louisa was already arrested. The record below indicates David paid for the tickets himself. That's what was going on here. So he's saying if anything is going to take me down, meaning the end of his political career, he's not going to be mayor anymore because we have a record below that said 90% of the time David Delladonna was asleep or not around. And Doobie Medrano made it clear that there's only two occasions that she spoke to him. Mr. Lamparella, excuse me for interrupting you, but it's hard to get it if you keep on. I know, it's such a limited amount of time and I apologize. No, I just wanted to know, did you argue that point to the jury? Of course. Okay. I had one question. Did the government argue that your client acted wrongfully when he did not advise the board, the alcohol beverage board I guess it is, of situations in cases in which he had recused irrelevant facts? In other words, it looked as if the government was arguing that even though he had recused and wouldn't, you know, act on the licensing that he had a duty to tell them about other licenses that they had or something. Is that in the case? The government clearly argued that he should have recused himself on the consent agenda when over 20 licensors… No, that's a different question. I'm talking about questions on cases in which he did recuse. Now, he did recuse on some matter. Twice. Okay. Did the government argue in those two situations that even though he recused, he should have given certain information about those cases to the board? That was not the argument. That was not an honest service type of argument if that's what the court is driving at. I just wanted to know if they made that factual argument. I have a limited amount of time. The briefs are clear. We think the sentence was excessive with regard to parity, and the court is aware of that issue. Thank you. Thank you. We did read the brief now. Ms. Sedlowski? May it please the Court, my name is Caroline Sedlowski, and I represent the United States. The government's position is that there was sufficient evidence of a stream of non-campaign contribution gifts accepted by David Daldana and Anna Daldana knowing that they were intended to influence them in their political office. How did you prove or how did you attempt to prove that David knew that? I'll leave aside Anna. After all, David, according to the record that we have, David didn't speak or understand Spanish, and Louisa only spoke and understood Spanish. So how did they get together? They got together through Anna and through the receipt of the gifts. David had knowledge of this continuous stream of gifts. How do we know that? There are several instances in the record where David was present. He was present. Doobie testified that he stopped Anna from showing how the breast reduction surgery would work, that he went with Anna to Louisa's house to pick up gambling money, that he was present when Anna told another person that Louisa continued to give her money to gamble in Atlantic City when they went gambling together, that he received the gift card, and that he asked Javier Incan about going into business with Louisa and talked about how profitable that would be. Defendants argue that the gift card was just a birthday card. I mean, nobody gives me a $500 gift card for my birthday, but I guess we don't want to count those birthdays anymore. But what shows that David knew that that wasn't simply a gift or a friendship? It was a permissible inference by the jury that there was no friendship between Louisa and Anna, never mind Louisa and David. The friendship was between Doobie and Anna. In any event, he didn't report this gift, as he should have, which is evidence that he was conscious of guilt in receiving this gift. And it isn't an ordinary kind of token gift that one would give in this relationship, but it is also part of this sort of extraordinary stream of gifts for two people who don't socialize together, but for someone who has many demands of the couple in terms of their political actions that they take, who comes to them again and again for help in their official capacity. Is there an inference that can be drawn that the jury was permitted to draw based on the political actions David took? Yes, the jury is entitled to weigh that evidence as evidence that he accepted these gifts, understanding that they were intended for him to take these actions. When Louisa was in trouble because of the fights at her bar, she had a hearing before the ABC board. David, we're using first names because the last names are the same, accused himself, right? Yes. Did the government argue that he should have reminded the board, even though he was recusing, that this was not her first offense and that he should have given them some information about it? Was that actually argued, the jury? There was a portion of the record that had to do with whether there was a hang period. There was a discussion of whether there was some kind of hang period. Because she was in the midst of receiving a second violation, there was an additional penalty that was supposed to kick in, and there's an issue about whether anyone, knowing that that was out there, anyone stepped in and should have reminded the board that this existed. Do I understand you to say that he should have taken action in a manner in which he was recused, and that even though he was recused, he should have participated to the extent of giving information to the other members who, by the way, were also at the original hearing and knew all about it? I mean, if he should have recused, he should have kept his mouth shut. Well, he should have recused himself from the ultimate decision, but recusing yourself doesn't mean you absolve yourself of having to provide information you know, but the argument of the government… Well, I'm not trying to say that I haven't learned much, because if I recuse in a case, I keep my mouth shut. If I see a typo, I might say something about the opinion. But if you recuse, you're not supposed to participate. How could you argue that? I don't think that the government relied strongly on the argument that if he had this information, this was his sworn duty, but if he… What did they say about it? I don't remember what they said in their closing argument, if anything, about it at all. It didn't come up. We'll see. I would have to review the closing argument, but I could relay that to the court. Could you speak to the Joinder issue for a moment and answer the argument that this is misjoined, and it was unfair to put the tax stuff into the mix with the political corruption charges? As a matter of law, there's no reason why these counts couldn't be joined. Why? Because counts 1 through 3 are properly related, as the defendant admits, and the defendant admits that count 5, as the tax return, which failed to report the proceeds of counts 1 through 3, are properly related, is properly joined, and counts 4 and 5 are all properly joined because they relate to the same series of acts or transactions. So under the more restrictive Rule 8b, each of these offenses are properly joined together. Should the court nevertheless… Wait, I'm not doing this together. Judge Ackerman could have separated these out, right? Judge Ackerman could have exercised his discretion under 14a, but he properly instructed them, which indicates that the jury was able to, and we assume that the jury followed their instructions and distinguished between the evidence on these counts. Moreover, all of the evidence on these counts could have been introduced as 404b evidence as to the other counts. How would the tax charges in count 4 have been 404b evidence as to counts 1, 2, or 3? They would have been 404b evidence as to count 5 because they would show a pattern, knowledge, absence of mistake in failing to report. I thought the premise of your answer was separating 4 and 5 and separating from 1, 2, and 3. At least that's what I had attempted to ask. So, well, that seems like a painful stretch to say you could have gotten to count 4 as 404b, but be that as it may. With regard to the issue, the comment about friendship, something which obviously was very troubling to Anna and her counsel, Judge Ackerman's response was, no, I'm not taking it out. In fact, it's particularly relevant here. Does that indicate that he was trying to insert something about his view into the instruction? No, Your Honor. It was an indication that Anna was hoping that they were going to misinterpret the law, that they were going to try and take advantage of an opportunity for the jury to become confused about what if they found these defendants acted both in friendship and because they intended to use their official office to benefit the Daldanas out of a sense of personal advancement. And the judge was making sure that if the jury had that issue before in their minds, that they would know that the law was that if there is a dual intent, and as he correctly stated to them, one of which is neutral, he didn't suggest that friendship was a reason why you could convict the Daldanas acting on friendship, but he said this is a neutral intent, but if they have them both, then you are entitled under the law to convict them. And it was appropriate to convict the jury, I mean for the jury to be instructed in this way. And if the judge hadn't done it, the jury could have erred as a matter of law in favor of defendant. Could you speak to the prejudice argument? I gather, at least from the briefs, I gather that the argument is that, I'm going back to the joinder issue, that the joinder of count four signified or could have signified to the jury that these are bad people. The conduct in count three was much worse than the conduct in count four. And in any case, the conduct in count four was less significant tax evasion than the conduct in count five, or the failure to report was less significant than in count five. It was the least significant of all the conduct that was introduced. It was permissible to introduce the conduct in count five. In fact, it was required if you're going to charge. How does that advance your argument? Because can't you just as well, I mean, that's like saying, well, maybe we got convicted on count four because they really disliked us on count three. You still got wrongly convicted of a count from the defense perspective if you were prejudiced, whether it was four prejudicing three or three prejudicing four. I mean, if you're comparing which is worse, how does that get you out of the box that the defense wants to put you in, which is they should have been together because you were going to have bleed over prejudice one way or the other. Well, the conduct is quite distinct. So the argument is that there isn't bleed over prejudice from one to the other because they're very unique sets of conduct, and the jury was instructed. If it's so unique and distinct, why was it not an abuse of discretion to put it together? The law is that the proceeds of a crime such as bribery when they are not reported may be… Extortion is the crime, I think. I'm sorry, extortion. You're right, Your Honor. May be tried together, and in fact, if you're charging that tax crime, you have to prove the extortion. You have to bring it in. Otherwise, you can't make out your tax case. So regardless of whether there's an analysis of prejudice, you have to try them together to prove the tax evasion. The court instructs the jury not to weigh these things. We assume that the jury can follow its instruction. They show that they could with respect to counts one and counts two. And in that respect, likewise with count four, the jury can follow the instructions that they're only required to consider the evidence as to that count and the defendant's conduct there. Thank you. Is there anything that you want to say in response to Mr. Lamparello's argument that this sentence was out of line with other sentences given to comparably situated defendants? I think the defendants were very selective in choosing the defendants that they added to their chart, and they were very selective about presenting the facts in that chart that were relevant for the courts to consider. And we pointed out in our brief the many differences between these defendants. Judge Ackerman properly exercised his discretion to find descendants within the guidelines, and Gall would say he considered disparities by considering the guidelines range. Who are the comparators that they wanted the district court to consider? These people plus who got less time? What kind of people? They had a chart of 40 different defendants. Who did what? Who committed various acts that could be considered under the umbrella of political question. They weren't all charged with the same thing. Some of them were mail fraud. For instance, Sharp James leaps out as someone who was mail fraud. Was he mayor? He was mayor of Newark, the former mayor of Newark. And he got less time in jail than these people? He got less time in jail than these people. That's on appeal. By the government? By the government. Really? Yeah. How much time did he get? I think he got three years, if I'm not mistaken. I'd have to ask. That must be a cross appeal. There is a cross appeal. 27 months, I think it was. 27 months? For Sharp James. How many? 27 months. Okay. Okay. Do you have any questions? No. Do you have any more questions? No, thank you. Thank you. We'll hear the rebuttal. Thank you, Your Honor. With regard to the sentence disparity, what we tried to call out is those individuals who went to trial with political corruptions, not the mayor of Camden who was arrested on a drug charge, political corruption. What a comment on the state from which my colleague is from. And a state, obviously, I'm from as well. But my point simply is Sharp James, 27 months, same type of counts. Senator Coniglio, 30 months just recently. This was by far an excessive sentence. Going back to the birthday card, I recognize $500, but recognize, please, it was from the Medrano family. That's three sisters. That's three sisters, Your Honor. And this is the same family. But they weren't the sisters of the person who received the card. No, of course not. Because that would be different. But this is the same group that brought eight people to Anna Della Donna's son's wedding. The record's complete. And they didn't give wedding presents, too? They did not give wedding presents. They did not give wedding presents, which was in a record below, which was the complaint. But if I may, this trial, we put this trial right to Doobie Medrano with the question on 1792, you're under oath. Was David taken advantage of? There was a pregnant pause in that courtroom. You're under oath, ma'am. Was David taken advantage of? The one witness against David to say on the quid, in my heart I feel so. That's their main witness, their only witness under our 29 application, in my heart I feel so. He was asleep. He was at work. He did not participate in this. Thank you very much. Thank you. We will take the matter under advisement.